UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
ANN READE-ALVAREZ and ANN R.
STUDEN, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

 -against-

ELTMAN, ELTMAN & COOPER, P.C.,   MEMORANDUM AND ORDER
ERIN CAPITAL MANAGEMENT, LLC,    04-CV-2195 (ILG)
JAMES BRIAN BOYLE, WILLIAM
NOLAN, ROBERT A. RUSSON, PAUL
RENAGHAN, CARL FON, MANUEL
BRAD MOSES, WILLIAM
CORTELLESSA, PETER COOPER and
MILTON RAWLE,

        Defendants.
------------------------------------------------x

GLASSER, United States District Judge:

## INTRODUCTION

Ann Reade-Alvarez ("Alvarez") and Ann R. Studen ("Studen") (collectively, "plaintiffs") have filed a putative class action lawsuit against defendants Eltman, Eltman & Cooper, P.C. ("EEC"), Erin Capital Management, LLC ("ECM") and several of their officers and directors (collectively, "defendants"), for their alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA" or the "Act"). Pending before the Court is defendants' motion to dismiss the amended complaint (the "complaint") pursuant to Fed. R. Civ. P. 12(b)(6).[1]

---

[1] The complaint was filed on May 27, 2004. By order to show cause dated October 22, 2004, plaintiff Reade-Alvarez moved the Court for, inter alia, leave to amend the complaint to add additional parties, including Studen. In a memorandum and order dated November 12, 2004, familiarity with which

1

Defendants argue that the factual allegations in the complaint do not state a claim upon which relief under the FDCPA can be granted. In response, plaintiffs argue that pursuant to the notice pleading standard of Fed. R. Civ. P. 8, they have set forth valid causes of action under the Act.

For the reasons set forth below, defendants' motion to dismiss the complaint is granted in part and denied in part.

## BACKGROUND

The facts are set forth in the light most favorable to plaintiffs. EEC is a law firm incorporated under the laws of the State of New York with its principal place of business in Manhattan. (Compl. ¶ 5). ECM is a debt collection agency with its principal place of business in the same office as EEC. (Id. ¶ 6). Plaintiffs allege that in correspondence they received from EEC, the telephone number and office address for EEC is the same as ECM. (Id. ¶¶ 47, 48). ECM is purportedly "sending letters and alleged legal pleadings under the name of the defendant EEC" and ECM's agents are therefore engaged in the unauthorized practice of law. (Id. ¶ 49).

---

is assumed, the Court held that because plaintiff was not required to secure the Court's permission to file an amended complaint under Fed. R. Civ. P. 15(a), she could do so as a matter of right. See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 224 F.R.D. 534 (E.D.N.Y. 2004). Plaintiff Reade-Alvarez filed a first amended complaint on November 16, 2004 and added Studen as an additional plaintiff, along with naming additional individual defendants. On January 3, 2005, plaintiffs filed a second amended complaint. However, since they never received permission from the Court to file the second amended complaint, and plaintiffs have not submitted evidence that defendants provided written consent to its filing (and a stipulation to that effect does not appear on the docket sheet), the Court considers the first amended complaint, and not the second amended complaint, in deciding this motion. See Fed. R. Civ. P. 15(a) (party may amend complaint once as a matter of right "before a responsive pleading is served" but "[o]therwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party"). References to the "complaint" in this memorandum and order are therefore to the first amended complaint.

1. **Ann Reade-Alvarez**

Reade-Alvarez allegedly incurred a debt to Providian, a company in the financial services industry, in the amount of $1,737.03. (Comp. ¶ 16). Providian assigned the debt to ECM. EEC, on behalf of its client, ECM, sent a letter dated November 26, 2003 to Reade-Alvarez. (Compl. ¶ 18). That letter, in addition to specifying the amount of the debt and the name of the creditor to whom the debt is owed, states as follows in its entirety:

> Please be advised that our firm has been retained by [ECM], purchaser of the above account, for the collection of this debt.
>
> Please call us to discuss this matter.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.

(Affidavit of Thomas A. Leghorn sworn to on January 20, 2005 ("Leghorn Aff.") Exh. D).

EEC sent Reade-Alvarez a second letter dated December 31, 2003, more than thirty days after the first, stating in relevant part, "You have ignored our previous correspondence, and therefore, we assume that this is a valid debt and that you have an obligation to pay." (Compl. ¶ 20; Leghorn Aff. Exh. D). After Reade-Alvarez failed to

respond, EEC sent her a third letter dated January 14, 2004, stating in relevant part, "We have attempted on numerous occasions to settle the above debt to no avail. It is imperative that you contact this office as soon as possible to discuss this matter. If we do not hear from you we will have no alternative but to advise our client of your failure to cooperate and request authority to commence legal action against you for the full amount of the outstanding debt." (Compl. ¶ 22; Leghorn Aff. Exh. D). Among other things, Reade-Alvarez asserts that this letter is "deceptive and misleading in that" it "falsely implies that ... EEC would have no alternative but to request authority from their client ECM to commence legal action against" her, when in "fact, the letter was sent by ECM under the" letterhead of EEC. (Compl. ¶ 24).

EEC sent Reade-Alvarez a fourth letter dated January 28, 2004, stating in relevant part, "We want to help you clear your credit with our client. To help you do this we take a friendly approach to working out problems. We offer **AFFORDABLE PAYMENT PLANS** and courteous professional service. No matter your experience in the past we are here to resolve this debt now. **THIS OFFER IS GOOD FOR 10 DAYS ONLY!** TEN days after the date of this letter our client reserves the right to seek the full amount. **BY ACTING NOW YOU MAY SAVE HUNDREDS OF DOLLARS**." (Compl. ¶ 25; Leghorn Aff. Exh. D) (emphasis in original). Reade-Alvarez asserts that this letter is, among other things, "false, deceptive and misleading in that [EEC] claims to take a friendly approach to working out problems. In fact, this letter was sent fourteen (14) days after the letter defendant ECM had sent threatening to gain authority to commence legal action against the plaintiff ... and 14 days before the letter defendant ECM sent notifying the plaintiff ... that EEC had been authorized to commence legal

4

action." (Compl. ¶ 27; Leghorn Aff. Exh. D). Reade-Alvarez also asserts that this letter is misleading because it "falsely impl[ies] that [she] may not enter into a payment plan after the ten days have passed" and thus also "create[s] the false sense of urgency." (Compl. ¶¶ 28, 29).

EEC sent Reade-Alvarez a fifth letter, dated February 11, 2004, stating in relevant part, "Our client has authorized us to commence legal action against you to recover the above balance. We would, of course, prefer to resolve the debt without recourse to litigation which is costly and a burden on all concerned. Please contact our office as soon as possible so that we may discuss this matter. If we do not hear from you we can only assume that we have no choice but to bring suit against you for the full balance due." (Compl. ¶ 30; Leghorn Aff. Exh. D). For among other reasons, Reade-Alvarez contends that this letter is "false, deceptive and misleading" because it "implies that … EEC has gained authority from ECM to commence legal action" against her when, in fact, "the letter has been sent from ECM and not EEC." (Compl. ¶ 32).

### 2. Ann R. Studen

Studen allegedly incurred a debt to Discover, a credit card company, in the amount of $5,879.30. (Compl. ¶ 33). Thereafter, Discover assigned the debt to ECM. (Id. ¶ 34). In an effort to collect the debt, EEC forwarded a letter dated July 23, 2004 to Studen, which is substantially the same as the first letter sent to Reade-Alvarez. (Id. ¶ 35; Leghorn Aff. Exh. E). More than 30 days later, by letter dated August 27, 2004, EEC forwarded a second letter to Studen, stating in relevant part as follows: "We want to help you clear your credit with our client. To help you do this we take a friendly approach to work out problems. We offer **AFFORDABLE PAYMENT PLANS** and courteous

5

professional service. No matter your experience in the past we are here to resolve this debt now. **THIS OFFER IS GOOD FOR 10 DAYS ONLY!** TEN days after the date of this letter our client reserves the right to seek the **full amount**. **BY ACTING NOW YOU MAY SAVE HUNDREDS OF DOLLARS**." (Compl. ¶ 37; Leghorn Aff. Exh. E) (emphasis in original). For among other reasons, Studen claims this letter is "deceptive and misleading" because it "falsely implies that the plaintiff may not enter into a payment plan after the ten days have passed from" August 27, 2004 and therefore "create[s] [a] false sense of urgency." (Compl. ¶¶ 39, 40).

Plaintiffs allege that all of the above-referenced letters sent to them were "computer generated and w[ere] submitted … without any meaningful attorney review." (Compl. ¶¶ 19, 21, 23, 26, 31, 36, 38). They therefore assert that the letters are "false, deceptive and misleading because the least sophisticated consumer would believe the letter[s], and all documents concerning the alleged debt referenced therein, were reviewed by an attorney prior to" the time when they were mailed. (Id.).

ECM, by its attorneys EEC, filed a summons and verified complaint dated August 27, 2004 against Studen in the Civil Court of the City of New York, County of Queens, to recover the debt. (Leghorn Aff. Exh. F). No attorney signed the complaint. (Id.). Studen alleges that no attorney from EEC, including the two individuals identified on the summons and complaint, "generated" these documents. (Compl. ¶ 42). The complaint was verified by Carl Fon, assistant secretary of ECM who signed under oath that he read the summons and complaint, knows "the contents thereof and the same are true to [his] knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true." (Id.). Mr.

Fon's personal knowledge is based on his review of records maintained by ECM. (Id.). Studen asserts, however, that a "false implication" exists that Mr. Fon executed the verification. (Id.).

Three days after oral argument, the Court received, via facsimile, a four-page letter from plaintiffs' counsel dated May 9, 2005, two pages of which cite cases intended to respond to questions which I had put to counsel which he declared were irrelevant and deemed unworthy of an answer.[2] His assumption evidently was that the Court was unaware of the law which informed it regarding relevance rather than its effort to explore the broader societal implications of the FDCPA and the relationship between the legislative history of the Act and the judicial application of it. His post-oral-argument letter "brief" was neither invited nor appropriate and was not considered.

## DISCUSSION

## I.     The Standard For Dismissal Under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted only if it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

---

[2]The transcript of the proceeding reflects, in relevant part, as follows at pages 6-7:

| | |
|---|---|
| The Court: | I don't want to engage in an extended dialogue regarding Clomon v. Jackson or into some extended dialogue of the Fair Debt Collection Act. Let me ask you, Mr. Arleo, did these plaintiffs owe somebody money? |
| Mr. Arleo: | Irrelevant for FDCPA violation. |
| The Court: | That is not what I'm asking you, sir. I'm asking whether these plaintiffs owe money. |
| Mr. Arleo | With all due respect on that, I don't even consider that in the context of an FDCPA claim whether they owe the money or not. |

Therefore, on a motion to dismiss, all factual allegations of the complaint must be accepted as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and all reasonable inferences must be made in plaintiffs' favor. Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted).

## II.     Are Plaintiffs' FDCPA Claims Conclusory?

Defendants argue that their motion should be granted because the complaint lacks factual support for the FDCPA claims. It is well-established that the Court is not required to credit plaintiffs' legal conclusions that the letters at issue violated the FDCPA. It must simply assume the facts, as alleged, to be true for the purposes of a motion to dismiss. See Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 137 (2d Cir. 2004) ("we are not required to accept as true the legal conclusions or unwarranted deductions of fact drawn by the non-moving party") (citing Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995); First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994), cert. denied, 513 U.S. 1079 (1995); 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.34 [1][b] (3d ed. 2004)). In other words, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks omitted). While the plaintiffs need not satisfy some "heightened" pleading standard, and instead need only comply with Fed. R. Civ. P. 8(a)'s liberal system of "notice pleading," see Leatherman v. Tarrant County Narcotics

Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993), and Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002), it is nonetheless true that the facts that are pleaded must provide a basis for a reasonable inference that defendants violated the FDCPA, because the Court is not obligated to draw unreasonable inferences in plaintiffs' favor. See generally Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 170 F.R.D. 361, 376 (S.D.N.Y. 1997) (claim for successor liability dismissed pursuant to Fed. R. Civ. P. 12(b)(6) where the plaintiff "makes no attempt to demonstrate that any Duferco defendant is, in fact, a successor corporation to a previously existing Duferco entity. Simply pleading such a legal conclusion is insufficient to stave off dismissal, even under Rule 8(a)") (citations omitted). Therefore, the critical issue is whether the complaint sets forth factual allegations to support the FDCPA claims, or merely legal conclusions. Drawing all inferences in favor of plaintiffs, the Court finds that they have met their burden at this preliminary stage of the proceedings to proceed with discovery on certain of their claims.

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). The legislative history of the Act demonstrates that the statute was passed in response to "collection abuses such as the use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" Kropelnicki v. Siegel, 290 F.3d 118, 127

(2d Cir. 2002) (citing S. Rep. No. 95-382, at 2 (1977), reprinted in, 1977 U.S.C.A.A.N. 1695, 1696).

Plaintiffs argue that they have properly alleged claims under the FDCPA by asserting that all of the letters they received from EEC were computer generated and thus caused the least sophisticated consumer to believe that these letters were reviewed by an attorney, when, in fact, they were not. (Compl. ¶¶ 19, 21, 23, 26, 31, 36, 38). Section 1692e of the FDCPA provides in relevant part:

> A debt collector may not use false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> ....
> (9) The use or distribution of any written communication ... which creates a false impression as to its source, authorization, or approval.
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

A letter sent by an attorney on behalf of a debt collector must be a product of "some degree of attorney involvement," including direct control or supervision of the process through which the letter is sent. Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 301 (2d Cir.), cert. denied, 540 U.S. 823 (2003). The leading case in this district on this issue is Clomon v. Jackson, 988 F.2d 1314 (2d Cir. 1993), in which a debt collection agency sent five mass-produced collection letters (also known as "dunning" letters) on the letterhead and under the signature of the agency's general counsel.[3] Although the general counsel was an attorney working for the agency, he did not sign the letters.

---

[3] In their moving papers, defendants did not cite Clomon and have failed to offer persuasive reasons why its holding is not directly applicable to the facts set forth in the complaint.

Instead, the letters were sent with a mechanically reproduced facsimile of his signature. While the general counsel approved the "form" of the letters, e.g., the general substance of the letter without reference to a specific individual, he "never considered the particular circumstances of [the plaintiff's] case prior to the mailing of the letters and he never participated personally in the mailing." Clomon, 988 F.2d at 1317. The Second Circuit held that these letters violated the FDCPA and were false and misleading because although the attorney's name and signature were on them, they were not "from" the attorney in any meaningful sense of the word. Id. at 1320. Specifically, the attorney failed to review the plaintiff's file, he did not approve the five letters that were sent to plaintiff, he did not receive any recommendations from individuals in his office that the letters should be sent, and he did not even know the plaintiff's identity. Id.

The Second Circuit in Clomon concluded that in a "mass mailing," it is almost always the case that an attorney has not been involved in any meaningful way with the facts of particular debtors. "For this reason, there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e."[4] Clomon, 988 F.2d at 1321.

Here, plaintiffs have alleged that the letters they received were computer generated and lacked meaningful attorney review. (Compl. ¶¶ 19, 21, 23, 26, 31, 36, 38). A review of the letters reveals that they were not signed by anyone, including attorneys

---

[4]"Since Clomon, courts in this circuit have denied summary judgment where the attorney signed the dunning letter but it was unclear how much involvement (if any) the attorney had in reviewing the debtor's file and there was no statement in the letter disavowing personal involvement." Pujol v. Universal Fidelity Corp., 2004 WL 1278163, at *5 (E.D.N.Y. June 4, 2004) (citations omitted). Since summary judgment has not been granted in cases such as these, the complaint in this case cannot be dismissed on a motion to dismiss where plaintiffs have alleged facts sufficient to demonstrate that EEC did not review plaintiffs' files before sending the demand letters and filing the summons and complaint against Studen.

11

associated with EEC. Rather, the letters contained a typed signature line stating "Very truly yours, Eltman, Eltman & Cooper, P.C." Further, each of the letters had the identical font and format, consistent with computer generation. Moreover, Reade-Alvarez and Studen received two letters that are virtually identical, suggesting that EEC utilized an automated process in generating them. Consistent with the reasoning in Clomon, therefore, the Court denies this portion of defendants' motion because plaintiffs have alleged sufficient facts to support a claim under the FDCPA. See Lang v. Winston & Winston, P.C., 2001 WL 641122, at *6 (N.D. Ill. June 4, 2001) (denying motion to dismiss FDCPA claims where plaintiffs alleged, among other things, "the defendant sends out thousands of collection letters like the one sent to [the plaintiff] without conducting 'a meaningful attorney review of the accounts'" and that "the letters defendant sends out are produced by a computer program that inserts information given to defendant by its creditor clients into pre-defined fields in a from letter").

Plaintiffs also assert that certain of the letters which EEC sent them created a false sense of urgency because they contained either false statements or false deadlines. (Compl. ¶¶ 29, 39, 40). However, a plain reading of those letters reveal that they were not false, deceptive or misleading. For example, the January 14, 2004 letter to Reade-Alvarez states in relevant part that if she does not contact EEC, it will "have no alternative but to advise [its] client of [her] failure to cooperate and request authority to commence [a] legal action against [her]." Plaintiff contends that this letter is false, deceptive and misleading because it "was sent by ECM under the defendant EEC letterhead," and that ECM was, in effect, engaged in the unauthorized practice of law. (Compl. ¶¶ 24, 45, 48). However, on its face, the letter represents what plaintiffs

contend it is – a communication sent by EEC, as counsel to ECM, to Reade-Alvarez. The least sophisticated consumer would understand the letter's content that the law firm would need authorization from its client before it could proceed with litigation. Moreover, as one court noted, allegations relating to the "unauthorized practice of law" are "the province of state bar associations and state courts. Plaintiffs' allegations in this matter certainly might interest [New York State's] Attorney Registration and Disciplinary Committee, but they do not appear to be cognizable under the FDCPA."[5] Bass v. Arrow Fin. Servs., L.L.C., 2002 WL 1559635, at *3 (N.D. Ill. July 16, 2002). The Court finds this reasoning persuasive. Therefore, to the extent that plaintiffs allege that ECM, through EEC, was engaged in the "unauthorized practice of law" because EEC is, in essence, an alter ego of ECM, that claim is not recognized by the FDCPA and it is dismissed.

The January 28, 2004 letter to Reade-Alvarez states that EEC's client offers affordable payment plans pursuant to which she could save hundreds of dollars, but that the offer would expire after ten days. (Compl. ¶ 25). The letter further states that following the expiration of the offer, ECM reserves the right to seek the full amount of the debt. Studen received an almost identical letter dated August 27, 2004. (Id. ¶ 40). The complaint does not allege any facts which would suggest that these letters were anything but truthful. EEC's client, ECM, is a collection agency that employs certain procedures in an effort to collect debts for its clients. Only it can determine what methods at its disposal should be utilized, and at what time, to collect unchallenged debts. See, e.g., Metz v. HCSC Credit and Collections, 1985 WL 3368, at *1 (E.D. Pa.

---

[5]This reasoning applies equally to the February 11, 2004 letter sent to Reade-Alvarez.

Oct. 29, 1985). The fact that the January 28, 2004 letter may have "taken a friendly approach to working out problems" see Compl. ¶ 27, and the January 14, 2004 letter did not, does not render the letter "false, misleading or deceptive." Therefore, this portion of defendants' motion is granted.[6]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the amended complaint is granted in part and denied in part. The parties are directed to contact the magistrate judge assigned to this case so that a discovery schedule can be issued. Following discovery, the parties may file dispositive pre-trial motions and/or plaintiffs may file a motion for class certification. The Clerk of Court is directed to randomly reassign this case to another judge.

SO ORDERED.

Dated:   Brooklyn, New York
         May 10, 2005.

_____/s/_____
I. Leo Glasser
United States District Judge

---

[6]To the extent that the individual defendants seek to dismiss the FDCPA claims against them, that motion is denied because viewing the allegations in the first amended complaint in the light most favorable to plaintiffs, the individual defendants are debt collectors and were personally involved in the collection of the debts at issue. See, e.g., Musso v. Seiders, 194 F.R.D. 43, 46 (D. Conn. 1999); Compl. ¶¶ 7-15.

14

Copies of the foregoing memorandum and order were sent to:

Robert L. Arleo
Law Offices of Robert L. Arleo
225 East 79th Street, Suite 2B
New York, New York 10021
tel: (212) 517-9967
fax: (212) 517-2919

Attorneys for Plaintiffs

Thomas A. Leghorn
Wilson, Elser, Moskowitz, Edelman & Decker LLP
3 Gannet Drive
White Plains, New York 10604
tel: (914) 323-7000
fax: (914) 323-7001

Attorneys for Defendants