```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

ANN READE-ALVAREZ and ANN R. STUDEN,
on behalf of themselves and all others
similarly situated,

            Plaintiffs,                    CV-04-2195 (CPS)

                                           MEMORANDUM OPINION
     - against -                           AND ORDER

ELTMAN, ELTMAN, & COOPER, P.C., ERIN
CAPITAL MANAGEMENT, LLC, JAMES BRIAN
BOYLE, WILLIAM NOLAN, ROBERT A. RUSSON,
PAUL RENAGHAN, CARL FON, MANUEL BRAD
MOSES, WILLIAM CORTELLESSA, PETER
COOPER and MILTON RAWLE,

            Defendants.

----------------------------------------X
```

SIFTON, Senior Judge.

This is a putative class action lawsuit brought by Ann Reade-Alvarez ("Alvarez") and Ann R. Studen ("Studen") (collectively, "plaintiffs") against defendants Eltman, Eltman & Cooper, P.C. ("EEC"), Erin Capital Management, LLC ("ECM") and several of their officers and directors (collectively, "defendants"), for their alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA" or the "Act"). On January 24, 2006, plaintiffs filed the following motions: (1) to certify a settlement class; (2) for preliminary approval of a proposed settlement agreement; (3) for an order directing notice to the class; and (4) for an order setting dates for opt-outs, objections, and a hearing pursuant to Federal Rule

of Civil Procedure 23(b)(3). After an oral argument held on February 23, 2006, I issued an order to show cause why individual notice to all class members should not be required. Plaintiffs and defendants have responded to the order to show cause. For the reasons set forth below, I conclude that individual notice to all putative class members is required and decline to certify the settlement class in the absence of agreement to provide such notice.

**BACKGROUND**

The following facts are taken from the parties' submissions in connection with this motion, as well as from Judge I. Leo Glasser's previous opinion in connection with this case.

EEC is a law firm incorporated under the laws of the State of New York with its principal place of business in Manhattan. (Compl. ¶ 5).[1] ECM is a debt collection agency with its principal place of business in the same office as EEC. (*Id.* ¶ 6). Plaintiffs allege that in correspondence they received from EEC, the telephone number and office address for EEC is the same as ECM. (*Id.* ¶¶ 47, 48). ECM is purportedly "sending letters and

---

[1] Although plaintiffs filed a second amended complaint on January 3, 2005, Judge Glasser, in his May 10, 2005 Memorandum and Order granting in part and denying in part defendants' motion to dismiss, stated that plaintiffs never received permission from the Court to file the second amended complaint, and plaintiffs had not submitted evidence that defendants provided written consent to its filing. Accordingly, Judge Glasser declined to consider the second amended complaint, and considered only the first amended complaint, in deciding the motion to dismiss. As was the case in Judge Glasser's Memorandum and Order, references to the complaint in this Memorandum Opinion and Order are to the first amended complaint.

alleged legal pleadings under the name of the defendant EEC" and ECM's agents are according to plaintiffs engaged in the unauthorized practice of law. (*Id*. ¶ 49).

### Facts Relating to Plaintiff Ann Reade-Alvarez

Reade-Alvarez allegedly incurred a debt to Providian, a company in the financial services industry, in the amount of $1,737.03. (Comp. ¶ 16). Providian assigned the debt to ECM. EEC, on behalf of its client, ECM, sent a letter dated November 26, 2003 to Reade-Alvarez. (Compl. ¶ 18). That letter, in addition to specifying the amount of the debt and the name of the creditor to whom the debt is owed, states as follows in its entirety:

> Please be advised that our firm has been retained by [ECM], purchaser of the above account, for the collection of this debt.
>
> Please call us to discuss this matter.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.

Affidavit of Thomas A. Leghorn sworn to on January 20, 2005 ("Leghorn Aff.").

EEC sent Reade-Alvarez a second letter dated December 31, 2003, more than thirty days after the first, stating in relevant part, "[y]ou have ignored our previous correspondence, and therefore, we assume that this is a valid debt and that you have an obligation to pay." (Compl. ¶ 20; Leghorn Aff.). After Reade-Alvarez failed to respond, EEC sent her a third letter dated January 14, 2004, stating in relevant part, "[w]e have attempted on numerous occasions to settle the above debt to no avail. It is imperative that you contact this office as soon as possible to discuss this matter. If we do not hear from you we will have no alternative but to advise our client of your failure to cooperate and request authority to commence legal action against you for the full amount of the outstanding debt." (Compl. ¶ 22; Leghorn Aff.). Among other things, Reade-Alvarez asserts that this letter is "deceptive and misleading in that" it "falsely implies that...EEC would have no alternative but to request authority from their client ECM to commence legal action against" her, when "[i]n fact, the letter was sent by ECM [on] EEC letterhead." (Compl. ¶ 24).

EEC sent Reade-Alvarez a fourth letter dated January 28, 2004, stating in relevant part:

> We want to help you clear your credit with our client. To help you do this we take a friendly approach to working out problems. We offer **AFFORDABLE PAYMENT PLANS** and courteous professional service. No matter your experience in the past we are here to resolve this debt now. **THIS OFFER IS GOOD FOR 10 DAYS ONLY!** TEN days after the date

>of this letter our client reserves the right to seek the full amount. **BY ACTING NOW YOU MAY SAVE HUNDREDS OF DOLLARS**.

(Compl. ¶ 25; Leghorn Aff.) (emphasis in original). Reade-Alvarez asserts that this letter is, among other things, "false, deceptive and misleading in that [EEC] claims to take a friendly approach to working out problems. In fact, this letter was sent fourteen (14) days after the letter defendant ECM had sent threatening to gain authority to commence legal action against the plaintiff...and 14 days before the letter defendant ECM sent notifying the plaintiff...that EEC had been authorized to commence legal action." (Compl. ¶ 27; Leghorn Aff.). Reade-Alvarez also asserts that this letter is misleading because it "falsely impl[ies] that [she] may not enter into a payment plan after the ten days have passed" and thus also "create[s] [a] false sense of urgency." (Compl. ¶¶ 28, 29).

EEC sent Reade-Alvarez a fifth letter, dated February 11, 2004, stating in relevant part, "[o]ur client has authorized us to commence legal action against you to recover the above balance. We would, of course, prefer to resolve the debt without recourse to litigation which is costly and a burden on all concerned. Please contact our office as soon as possible so that we may discuss this matter. If we do not hear from you we can only assume that we have no choice but to bring suit against you for the full balance due." (Compl. ¶ 30; Leghorn Aff.).

Reade-Alvarez contends that this letter is "false, deceptive and misleading" because, among other reasons, it "implies that...EEC has gained authority from ECM to commence legal action" against her when, in fact, "the letter has been sent from ECM and not EEC." (Compl. ¶ 32).

### Facts Relating to Plaintiff Ann R. Studen

Studen allegedly incurred a debt to Discover, a credit card company, in the amount of $5,879.30. (Compl. ¶ 33). Thereafter, Discover assigned the debt to ECM. (*Id.* ¶ 34). In an effort to collect the debt, EEC forwarded a letter dated July 23, 2004 to Studen, which is substantially the same as the first letter sent to Reade-Alvarez. (*Id.* ¶ 35; Leghorn Aff.). More than 30 days later, by letter dated August 27, 2004, EEC forwarded a second letter to Studen, stating in relevant part as follows:

> We want to help you clear your credit with our client. To help you do this we take a friendly approach to work out problems. We offer **AFFORDABLE PAYMENT PLANS** and courteous professional service. No matter your experience in the past we are here to resolve this debt now. **THIS OFFER IS GOOD FOR 10 DAYS ONLY!** TEN days after the date of this letter our client reserves the right to seek the full amount. **BY ACTING NOW YOU MAY SAVE HUNDREDS OF DOLLARS.**

(Compl. ¶ 37; Leghorn Aff.) (emphasis in original). Studen claims this letter is "deceptive and misleading" because, among other reasons, it "falsely implies that the plaintiff may not enter into a payment plan after the ten days have passed from" August 27, 2004 and therefore "create[s] [a] false sense of urgency." (Compl. ¶¶ 39, 40).

Plaintiffs allege that all of the above-referenced letters sent to them were "computer generated and w[ere] submitted... without any meaningful attorney review." (Compl. ¶¶ 19, 21, 23, 26, 31, 36, 38). They therefore assert that the letters are "false, deceptive and misleading because the least sophisticated consumer would believe the letter[s], and all documents concerning the alleged debt referenced therein, were reviewed by an attorney prior to" the time when they were mailed. (*Id.*).

ECM, by its attorneys EEC, filed a summons and verified complaint dated August 27, 2004 against Studen in the Civil Court of the City of New York, County of Queens, to recover the debt. (Leghorn Aff.). No attorney signed the complaint. (*Id.*). Studen alleges that no attorney from EEC, including the two individuals identified on the summons and complaint, "generated" these documents. (Compl. ¶ 42). The complaint was verified by Carl Fon, assistant secretary of ECM who signed under oath that he read the summons and complaint, knows "the contents thereof and the same are true to [his] knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true." (*Id.*). Mr. Fon's personal knowledge is based on his review of records maintained by ECM. (*Id.*). Studen asserts, however, that a "false implication" exists that Mr. Fon executed the verification. (*Id.*).

Plaintiffs do not allege any actual damages; however, they seek statutory damages pursuant to 15 U.S.C. 1692k.[2]

### Defendant's Motion to Dismiss

On December 17, 2004, defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). By written Memorandum and Order, dated May 10, 2005, Judge Glasser of this Court granted in part and denied in part the motion to dismiss. Judge Glasser denied defendants' motion to dismiss plaintiffs' claims that defendants violated the FDCPA when they sent plaintiffs computer generated letters which would cause the least sophisticated consumer to believe that the letters were reviewed by an attorney, when, in fact, they were not. Judge Glasser granted defendants' motion to dismiss plaintiffs' claims that the letters created a false sense of urgency and were therefore "false, misleading or deceptive" in violation of the FDCPA. Finally, Judge Glasser denied the individual defendants' motion to dismiss the FDCPA claims against them. Plaintiffs subsequently

---

[2] 15 U.S.C. 1692k(a) provides, in relevant part:
[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
    (1) any actual damage sustained by such person as a result of such failure;
    (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
    (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and
    (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

filed a notice of appeal of that decision with the Court of Appeals.[3]

### Plaintiffs' Motion to Certify the Settlement Class and for Preliminary Approval of the Settlement Agreement

On January 24, 2006, plaintiffs moved for an order certifying the following proposed settlement class:

> All persons who were sent letters by the defendant Eltman, Eltman & Cooper, P.C. at addresses within the State of New York for the period May 27, 2003 (one year prior to the filing of the complaint) to the effective date of the order signed by the Court approving this class settlement through which said defendant attempted to collect from said persons personal debts alleged to be owed Erin Capital Management, LLC.

Plaintiffs contend that the proposed class satisfies the requirement of Fed. R. Civ. P. 23(b)(3), which requires that this Court find:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Plaintiffs also moved for preliminary approval of the settlement agreement, for an order directing notice to the class, for an order setting dates for opt-outs, objections, and a hearing.

On February 23, 2006 oral argument on plaintiffs' motion was held. The parties were thereafter directed to inform the Court what, if any, their plans were for individual notice to all

---

[3]Plaintiffs have since withdrawn the appeal without prejudice to its renewal.

putative class members. On March 1, 2006, counsel for plaintiff and putative class counsel informed the Court that the only notice the parties intended to provide was publication in a New York newspaper for two days, due to "monetary limitations." Thereafter, I issued an order to show cause why individual notice to all putative class members should not be required pursuant to Fed. R. Civ. P. 23(c)(2) and United States Supreme Court's ruling in *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974). Plaintiffs' counsel responded that "if Your Honor is of the firm opinion that individual mail notice be required I have no objection thereto;" however, defendants' counsel asserts that the costs associated with providing individual notice to all putative class members would prevent consummation of the settlement agreement.

For the reasons set forth below, I find that individual notice to all putative class members is required. Because the parties have indicated that the cost of individual notice in this case would prevent their settling the case, the motions to certify a settlement class and for preliminary approval of the proposed settlement agreement is denied.

## DISCUSSION

Under Rule 23(c)(2), when a class is certified under Rule 23(b)(3), this Court is to direct to the members of the class "the best notice practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort." Fed R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974). The form of notice must fairly apprise the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982). The proposed notice in this case contains all the necessary information, including a summary of settlement terms and procedures for objections and opt-outs. However, the parties have proposed that notice to the class be accomplished simply by publication of the notice for 2 consecutive days in the New York Post. As the Supreme Court stated in *Eisen*, 417 U.S. at 175:

> [T]he express language and intent of [Rule 23(c)(2)(B)] leave no doubt that individual notice must be provided to those class members who are identifiable through reasonable effort. In the present case, the names and addresses of 2,250,000 class members are easily ascertainable, and there is nothing to show that individual notice cannot be mailed to each. For these class members, individual notice is clearly the 'best notice practicable' within the meaning of Rule 23(c)(2) and our prior decisions....

Because the putative class itself is defined as those individuals who have received collection letters from defendants, I find that the individual class members (and their mailing addresses) can be identified through reasonable effort.

Defendants argue that the cost of providing individual notice in this case would be prohibitively high and would frustrate the parties' attempt to settle the case; however, as the *Eisen* Court noted:

> [I]ndividual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23....There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs.

*Id*. Moreover, the case law holds that although this Court has the authority to direct defendants to perform necessary tasks in order to effectuate individual notice, the costs of providing individual notice must be borne by plaintiffs. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978). In the present case, were the parties to go forward with their attempt to settle, while plaintiffs would be required to bear the costs of providing individual notice to the class members, defendants, who have the names and addresses of the putative class members, would be directed to forward that information to plaintiffs.

In the alternative, defendants argue, "in the event that the Court feels that individual notice is required under the facts presented the plaintiff should be permitted to amend the complaint to bring this action under Federal Rule of Civil Procedure 23(b)(1)(A)," so that "the Court would no longer need to comply with the requirements of F.R.C.P. 23(c)(2)."

Rule 23(b)(1)(A) permits certification of a class when "the

prosecution of separate actions by or against individual members of the class would create a risk of...inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class...." As opposed to class certification under Rule 23(b)(3), which is bound by the stringent notice requirements of Rule 23(c)(2)(B), notice requirements with respect to a class certified under Rule 23(b)(1)(A) are governed by Rule 23(c)(2)(A), which states, "[f]or any class certified under Rule 23(b)(1) or (2), the court may direct appropriate notice to the class." However, for the reasons stated below, I find that certification of this class under Rule 23(b)(1)(A) is not appropriate.

"Courts are still struggling to develop guidelines governing the scope of Rule 23(b)(1)(A)." *In re Simon II Litig.*, 407 F.3d 125, 133 n. 6 (2d Cir.2005) (internal citations and quotations omitted). However, courts generally apply Rule 23(b)(1)(A) restrictively, limiting the rule to cases "'where the [defendant] is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the [defendant] must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners).'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (quoting Benjamin Kaplan, Continuing Work of the

Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 HARV. L. REV. 356, 388 (1967). Indeed, many courts "have held that Rule 23(b)(1)(A) does not apply to actions seeking compensatory damages." *Namoff v. Merrill Lynch, Pierce, Fenner, and Smith (In re Dennis Greenman Sec. Litig.)*, 829 F.2d 1539, 1545 (11th Cir.1987). "Implicit in these decisions is the view that only actions seeking declaratory or injunctive relief can be certified under this section." *Id*. "Underlying this is the concern that if compensatory damage actions can be certified under Rule 23(b)(1)(A), then all actions could be certified under the section, thereby making the other sub-sections of Rule 23 meaningless, particularly Rule 23(b)(3)." *Id; see also Trautz v. Weisman*, 846 F.Supp. 1160, 1168 (S.D.N.Y.1994), *quoting Abramovitz v. Ahern*, 96 F.R.D. 208, 215 (D.Conn.1982)(stating, "[c]lass certification under Rule 23(b)(1)(A) is only proper where a class representative 'seeks injunctive relief to alter an on-going course of conduct which is either legal or illegal as to all members of the class.'"); *Cashman v. Dolce Intern./Hartford, Inc.*, 225 F.R.D. 73, 92 (D.Conn.2004), *citing Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845-46 (1999) ("Class actions under Rules 23(b)(1) and 23(b)(2) are often described as 'mandatory' classes, because individual class members may not opt-out of the class action and pursue separate litigation that might prejudice other class members or the defendant. Use of mandatory classes for

litigation seeking only or primarily monetary damages may raise constitutional concerns.").

Defendants in the present case, without citation to authority, argue:

> The plaintiffs' case could be maintained under F.R.C.P 23(b)(1)(a) on the basis that a class of over 45,000 people creates the risk of inconsistent or varying adjudications with respect to the individual members of the class. The facts involved in the sending, receipt and review of the over 45,000 letters sent by the law firm of Eltman, Eltman & Cooper will not be identical in every case. There will be facts present in some plaintiff's [sic] cases that may result in a ruling that is inconsistent with other cases already decided or that will be decided in the future.

However, plaintiffs are seeking monetary damages, as opposed to declaratory or injunctive relief. Moreover, the parties have not shown that here there is a risk of "inconsistent or varying adjudications...which would establish incompatible standards of conduct" for the defendants. While it is possible that different Courts adjudicating claims of putative class members could award varying amounts of damages and that some Courts could find no liability at all, these variances do not justify certification under Rule 23(b)(1)(A). *See, e.g., In re Nigeria Charter Flights Contract Litigation,* 233 F.R.D. 297, 303 (E.D.N.Y.2006), *quoting Cullen v. New York State Civil Serv. Comm.*, 435 F.Supp. 546, 562 (E.D.N.Y.1977) ("As plaintiffs seek only a declaration of legal liability for past acts, and as requiring a defendant to pay judgments in some case but not others 'hardly call[s] for

inconsistent conduct,' Rule 23(b)(1)(A) certification is inappropriate in this case."); *Vaughter v. Eastern Air Lines, Inc.*, 817 F.2d 685, 690 (11th Cir.1987) ("Normally, the mere possibility that a defendant might be liable for payments to some potential class members but not to others does not constitute the 'incompatible standards of conduct' of concern in Rule 23(b)(1)(A)...."). The present case is inappropriate for certification under Rule 23(b)(1)(A), and as a case involving a class to be certified under Rule 23(b)(3), it is subject to the stringent notice requirements of Rule 23(c)(2).

Accordingly, I hold that individual notice to all class members is required pursuant to Rule 23(c)(2).

**CONCLUSION**

For the reasons stated above, I find that individual notice to all class members is required and that, in the absence of agreement to provide such notice, plaintiffs' motions to certify a settlement class and for preliminary approval of the proposed settlement agreement must be denied.

SO ORDERED.

Dated :  Brooklyn, New York
         April 11, 2006

                By: /s/ Charles P. Sifton (electronically signed)
                    United States District Judge