```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

ANN READE-ALVAREZ and ANN R. STUDEN,
on behalf of themselves and all others
similarly situated,

                Plaintiffs,                CV-04-2195 (CPS)

                                           MEMORANDUM OPINION
        - against -                        AND ORDER

ELTMAN, ELTMAN, & COOPER, P.C., ERIN
CAPITAL MANAGEMENT, LLC, JAMES BRIAN
BOYLE, WILLIAM NOLAN, ROBERT A. RUSSON,
PAUL RENAGHAN, CARL FON, MANUEL BRAD
MOSES, WILLIAM CORTELLESSA, PETER
COOPER and MILTON RAWLE,

                Defendants.

----------------------------------------X
```

SIFTON, Senior Judge.

This is a putative class action lawsuit brought by Ann Reade-Alvarez ("Alvarez") and Ann R. Studen ("Studen") (collectively, "plaintiffs") against defendants Eltman, Eltman & Cooper, P.C. ("EEC"), Erin Capital Management, LLC ("ECM") and several of their officers and directors (collectively, "defendants"), for their alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA" or the "Act"). Presently before the Court are plaintiffs' motions (1) to certify a settlement class; (2) for preliminary approval of a proposed settlement agreement; (3) for an order directing notice to the class; and (4) for an order setting dates for optouts, objections, and a hearing pursuant to Federal Rule of

Civil Procedure 23(b)(3). For the reasons that follow, the motions are granted.

**BACKGROUND**

The following facts are taken from the parties' submissions in connection with this motion, as well as from Judge I. Leo Glasser's previous opinion in connection with this case. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 369 F.Supp.2d 353 (E.D.N.Y.2005).

EEC is a law firm incorporated under the laws of the State of New York with its principal place of business in Manhattan. (Compl. ¶ 5).[1] ECM is a debt collection agency with its principal place of business in the same office as EEC. (*Id.* ¶ 6). Plaintiffs allege that in correspondence they received from EEC, the telephone number and office address for EEC is the same as ECM. (*Id.* ¶¶ 47, 48). ECM is purportedly "sending letters and alleged legal pleadings under the name of the defendant EEC" and ECM's agents are according to plaintiffs engaged in the unauthorized practice of law. (*Id.* ¶ 49).

---

[1] Although plaintiffs filed a second amended complaint on January 3, 2005, Judge Glasser, in his May 10, 2005 Memorandum and Order granting in part and denying in part defendants' motion to dismiss, stated that plaintiffs never received permission from the Court to file the second amended complaint, and plaintiffs had not submitted evidence that defendants provided written consent to its filing. Accordingly, Judge Glasser declined to consider the second amended complaint, and considered only the first amended complaint, in deciding the motion to dismiss. As was the case in Judge Glasser's Memorandum and Order, references to the complaint in this Memorandum Opinion and Order are to the first amended complaint.

Facts Relating to Plaintiff Ann Reade-Alvarez

Reade-Alvarez allegedly incurred a debt to Providian, a company in the financial services industry, in the amount of $1,737.03. (Comp. ¶ 16). Providian assigned the debt to ECM. EEC, on behalf of its client, ECM, sent a letter dated November 26, 2003 to Reade-Alvarez. (Compl. ¶ 18). That letter, in addition to specifying the amount of the debt and the name of the creditor to whom the debt is owed, states as follows in its entirety:

> Please be advised that our firm has been retained by [ECM], purchaser of the above account, for the collection of this debt.
>
> Please call us to discuss this matter.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.

Affidavit of Thomas A. Leghorn sworn to on January 20, 2005 ("Leghorn Aff.").

EEC sent Reade-Alvarez a second letter dated December 31, 2003, more than thirty days after the first, stating in relevant part, "[y]ou have ignored our previous correspondence, and

therefore, we assume that this is a valid debt and that you have an obligation to pay." (Compl. ¶ 20; Leghorn Aff.). After Reade-Alvarez failed to respond, EEC sent her a third letter dated January 14, 2004, stating in relevant part, "[w]e have attempted on numerous occasions to settle the above debt to no avail. It is imperative that you contact this office as soon as possible to discuss this matter. If we do not hear from you we will have no alternative but to advise our client of your failure to cooperate and request authority to commence legal action against you for the full amount of the outstanding debt." (Compl. ¶ 22; Leghorn Aff.). Among other things, Reade-Alvarez asserts that this letter is "deceptive and misleading in that" it "falsely implies that...EEC would have no alternative but to request authority from their client ECM to commence legal action against" her, when "[i]n fact, the letter was sent by ECM [on] EEC letterhead." (Compl. ¶ 24).

EEC sent Reade-Alvarez a fourth letter dated January 28, 2004, stating in relevant part:

> We want to help you clear your credit with our client. To help you do this we take a friendly approach to working out problems. We offer **AFFORDABLE PAYMENT PLANS** and courteous professional service. No matter your experience in the past we are here to resolve this debt now. **THIS OFFER IS GOOD FOR 10 DAYS ONLY!** TEN days after the date of this letter our client reserves the right to seek the full amount. **BY ACTING NOW YOU MAY SAVE HUNDREDS OF DOLLARS.**

(Compl. ¶ 25; Leghorn Aff.) (emphasis in original). Reade-Alvarez

asserts that this letter is, among other things, "false, deceptive and misleading in that [EEC] claims to take a friendly approach to working out problems. In fact, this letter was sent fourteen (14) days after the letter defendant ECM had sent threatening to gain authority to commence legal action against the plaintiff...and 14 days before the letter defendant ECM sent notifying the plaintiff...that EEC had been authorized to commence legal action." (Compl. ¶ 27; Leghorn Aff.). Reade-Alvarez also asserts that this letter is misleading because it "falsely impl[ies] that [she] may not enter into a payment plan after the ten days have passed" and thus also "create[s] [a] false sense of urgency." (Compl. ¶¶ 28, 29).

EEC sent Reade-Alvarez a fifth letter, dated February 11, 2004, stating in relevant part, "[o]ur client has authorized us to commence legal action against you to recover the above balance. We would, of course, prefer to resolve the debt without recourse to litigation which is costly and a burden on all concerned. Please contact our office as soon as possible so that we may discuss this matter. If we do not hear from you we can only assume that we have no choice but to bring suit against you for the full balance due." (Compl. ¶ 30; Leghorn Aff.). Reade-Alvarez contends that this letter is "false, deceptive and misleading" because, among other reasons, it "implies that...EEC has gained authority from ECM to commence legal action" against

her when, in fact, "the letter has been sent from ECM and not EEC." (Compl. ¶ 32).

Facts Relating to Plaintiff Ann R. Studen

Studen allegedly incurred a debt to Discover, a credit card company, in the amount of $5,879.30. (Compl. ¶ 33). Thereafter, Discover assigned the debt to ECM. (*Id.* ¶ 34). In an effort to collect the debt, EEC forwarded a letter dated July 23, 2004 to Studen, which is substantially the same as the first letter sent to Reade-Alvarez. (*Id.* ¶ 35; Leghorn Aff.). More than 30 days later, by letter dated August 27, 2004, EEC forwarded a second letter to Studen, stating in relevant part as follows:

> We want to help you clear your credit with our client. To help you do this we take a friendly approach to work out problems. We offer **AFFORDABLE PAYMENT PLANS** and courteous professional service. No matter your experience in the past we are here to resolve this debt now. **THIS OFFER IS GOOD FOR 10 DAYS ONLY!** TEN days after the date of this letter our client reserves the right to seek the full amount. **BY ACTING NOW YOU MAY SAVE HUNDREDS OF DOLLARS**.

(Compl. ¶ 37; Leghorn Aff.) (emphasis in original). Studen claims this letter is "deceptive and misleading" because, among other reasons, it "falsely implies that the plaintiff may not enter into a payment plan after the ten days have passed from" August 27, 2004 and therefore "create[s] [a] false sense of urgency." (Compl. ¶¶ 39, 40).

Plaintiffs allege that all of the above-referenced letters sent to them were "computer generated and w[ere] submitted... without any meaningful attorney review." (Compl. ¶¶ 19, 21, 23,

26, 31, 36, 38). They therefore assert that the letters are "false, deceptive and misleading because the least sophisticated consumer would believe the letter[s], and all documents concerning the alleged debt referenced therein, were reviewed by an attorney prior to" the time when they were mailed. (*Id.*).

ECM, by its attorneys EEC, filed a summons and verified complaint dated August 27, 2004 against Studen in the Civil Court of the City of New York, County of Queens, to recover the debt. (Leghorn Aff.). No attorney signed the complaint. (*Id.*). Studen alleges that no attorney from EEC, including the two individuals identified on the summons and complaint, "generated" these documents. (Compl. ¶ 42). The complaint was verified by Carl Fon, assistant secretary of ECM who signed under oath that he read the summons and complaint, knows "the contents thereof and the same are true to [his] knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true." (*Id.*). Mr. Fon's personal knowledge is based on his review of records maintained by ECM. (*Id.*). Studen asserts, however, that a "false implication" exists that Mr. Fon executed the verification. (*Id.*).

Plaintiffs do not allege any actual damages; however, they

seek statutory damages pursuant to 15 U.S.C. 1692k.[2]

Defendant's Motion to Dismiss

On December 17, 2004, defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). By written Memorandum and Order, dated May 10, 2005, Judge Glasser of this Court granted in part and denied in part the motion to dismiss. Judge Glasser denied defendants' motion to dismiss plaintiffs' claims that defendants violated the FDCPA when they sent plaintiffs computer generated letters which would cause the least sophisticated consumer to believe that the letters were reviewed by an attorney, when, in fact, they were not. Judge Glasser granted defendants' motion to dismiss plaintiffs' claims that the letters created a false sense of urgency and were therefore "false, misleading or deceptive" in violation of the FDCPA. Finally, Judge Glasser denied the individual defendants' motion to dismiss the FDCPA claims against them. Plaintiffs subsequently filed a notice of appeal of that decision with the Court of

---

[2] 15 U.S.C. 1692k(a) provides, in relevant part:
[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
    (1) any actual damage sustained by such person as a result of such failure;
    (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
    (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and
    (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

Appeals.[3]

**DISCUSSION**

Certification of Settlement Class

Plaintiffs move for an order certifying the following proposed settlement class:

> All persons who were sent letters by the defendant Eltman, Eltman & Cooper, P.C. at addresses within the State of New York for the period May 27, 2003 (one year prior to the filing of the complaint) to the effective date of the order signed by the Court approving this class settlement through which said defendant attempted to collect from said persons personal debts alleged to be owed Erin Capital Management, LLC.

Potential class members have been given the option to opt out of the class.

Federal Rule of Civil Procedure 23(a) sets forth the requirements for class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, for a class action to be maintainable, it must satisfy one of the subsections of Federal Rule of Civil Procedure 23(b). In the present action, Rule 23(b)(3) is applicable. Rule 23(b)(3) requires that this Court find:

---

[3] The parties have since stipulated to withdraw the appeal without prejudice to its renewal.

>     that the questions of law or fact common to the members
>     of the class predominate over any questions affecting
>     only individual members, and that a class action is
>     superior to other available methods for the fair and
>     efficient adjudication of the controversy.

Certification of a class for settlement purposes only is permissible and appropriate, provided these standards are met. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997). The burden for establishing the criteria for class certification is on the party seeking that certification. *In re Medical X-Ray Film Antitrust Litigation*, 1997 WL 33320580, at *2 (E.D.N.Y.). Class certification should be granted if the court "is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. v. Falcon*, 457 U.S. 157, 161 (1982). Furthermore, in the Second Circuit "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (citing *Sharif ex rel. Salahuddin v. New York State Educ. Dep't*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989)).

Turning to the criteria of Rule 23, it is apparent that the proposed class satisfies the numerosity requirement. There is no requirement that the exact number of class members be known for class certification. *In re Medical X-Ray Film Antitrust Litigation*, at *3 (citing *In re Nasdaq Market-Makers Antitrust Litigation*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996)). The parties

estimate that the proposed settlement class includes over 45,000 persons. Clearly, the proposed settlement class is so numerous that joinder would be impracticable.

Second, it is also clear that the commonality requirement is satisfied in this case. Commonality requires that class members' claims share a common question of law or fact. *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). Where "injuries derive from a unitary course of conduct by a single system," a district court is within its discretion in finding commonality. *Marisol A.*, 126 F.3d at 377. Plaintiffs' claims all involve defendants' alleged practice of sending "false, deceptive, and misleading" letters in an attempt to collect plaintiffs' debts. The claims all allege violations of the Fair Debt Collection Practices Act. Accordingly, I find that there are common questions of law and fact sufficient to satisfy Rule 23(a)(2).

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson*, 267 F.3d at 155 (internal quotation marks omitted). The typicality requirement "has been found to be satisfied when the claims of the representatives and other class members are based on the same

legal or remedial theory and there are no antagonistic interests between the two groups." *In re Medical X-Ray Film Antitrust Litigation*, at *3 (internal quotation marks omitted) (quoting *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982)). As stated above, plaintiffs Alvarez and Studen both allege violations of the FDCPA. They allege that they received collection communications from defendants which contain false, deceptive, and misleading statements. The representative plaintiffs' claims arise from the same conduct of the defendants that gives rise to the claims of the putative class members, and there appear to be no antagonistic interests between the class representatives and the putative class members. Accordingly, I find the typicality requirement to have been met.

The final requirement of Rule 23(a) is adequacy of representation. This requirement consists of two elements: (1) the representative plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiffs' interests must not be antagonistic to those of the remainder of the class. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). The complaint states, "[t]he Plaintiffs will fairly and adequately protect the interests of the class defined herein. They have retained counsel experienced in handling actions involving unlawful practices under the FDCPA and class actions. Neither Plaintiffs nor their

counsel have any interests, which might cause them not to vigorously pursue their action." Accordingly, I find that the first element of Rule 23(a)(4) is satisfied. And as discussed above, the representative plaintiffs do not have any interests antagonistic to the putative class members; indeed, they are in the same position with respect to defendants and must make the same showings in order to establish defendants' liability. Accordingly, I find that the adequacy of representation requirement is met in this case.

Moving on to the requirements of Rule 23(b)(3), I find that common questions of law and fact predominate over individual questions. In order to satisfy the predominance requirement, the party seeking certification "must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole,...predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001) (internal quotation marks and citation omitted), *cert. den. sub nom. Visa U.S.A. Inc. v. Wal-Mart Stores, Inc.*, 122 S. Ct. 2382 (2002). Although there are thousands of individual transactions at issue in this litigation, plaintiffs allege that defendants' conduct with respect to each transaction — which must form the basis for liability — was similar or identical. Accordingly, I find that the predominance requirement of Rule

23(b)(3) is satisfied.

Finally, it is clear that the class action is superior to other available methods for resolution of this controversy. Rule 23(b)(3) requires consideration of four factors in this regard: (1) the interest of class members in individually controlling the prosecution of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in this particular forum, and (4) the difficulties likely to be encountered in the management of a class action. Given the large number of class members and the relatively small value of their individual claims, as further described below, class members clearly have an interest in avoiding separate litigation of the claims and little to no interest in individually controlling their prosecution. This Court is unaware of any other litigation against these defendants commenced by other members of the putative class. Concentration of litigation in this forum will prevent the inefficiencies of multiple litigations that might stand in the way of a beneficial comprehensive settlement, such as the one currently before the Court. Finally, the fourth factor is irrelevant here, because the plaintiffs seek certification solely for the purposes of settlement. "Confronted with a request for settlement-only class certification, a district court need not


inquire whether the case, if tried, would present intractable management problems...for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). I therefore find that the class action device is superior to other available methods for resolution of this controversy.

For the foregoing reasons, I certify the proposed settlement class.

Preliminary Approval of Settlement

The parties propose the following settlement:

[T]he Defendant Eltman, Eltman & Cooper, P.C. agrees that attorneys must exercise supervision and control over non-attorney staff in compliance with the FDCPA and state bar ethics rules, and further agrees to adhere to the law of this circuit as most recently set forth in Greco v. Trauner, Cohen & Thomas, LLP, 412 F. 3d 360 (2d Cir. 2005).

[T]he Defendants will tender $15,000.00 as a Cy Pres payment to the Queens County Legal Aid Society for use defending consumers against lawsuits brought by debt collectors. Statutory damages of $1,000.00 each will be paid to Ann Reade-Alvarez and Ann R. Studen. An additional payment of $1,000.00 each will be paid to Ann Reade-Alvarez and Ann R. Studen for their services as class representatives herein. $50,000.00 will be paid to Plaintiffs' counsel, Robert L. Arleo, said amount representing payment for attorney's fees and costs advanced in conjunction with the herein action.

The parties further agree that if more than 10% of the class members decide to opt out of the class, Defendants may revoke the Settlement Agreement.

Preliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness

and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval. *Manual for Complex Litigation* § 30.41; *In re Medical X-Ray Film Antitrust Litigation*, at *6.

The proposed settlement does not appear to be collusive, given the lengthy and comprehensive negotiations surrounding it, and plaintiffs' attorney will be given an opportunity to make an application for appropriate attorney fees during the fairness hearing. There is no unduly preferential treatment to class representatives, as they each receive only $1000 in statutory damages and $1000 in payment for their services as representatives pursuant to the settlement agreement. Furthermore, the class settlement is within the range of possible approval because defendants have agreed to provide a cy pres payment of $15,000, even though EEC's net worth is $1,000,000, which would allow for a class recovery of only $10,000 pursuant to 15 U.S.C. 1692k.

In terms of the overall fairness, adequacy, and reasonableness of the settlement, a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval. I note, however, that the factors to be

considered in such an analysis include: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Clearly, some of these factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing.

At this stage, brief consideration of these factors leads to the conclusion that the proposed relief awarded to class members under the settlement is within the range of possible approval. This litigation poses a series of complex logistical problems that will likely be expensive to manage through trial, mainly because the class is so large and diffuse. The parties have begun conducting discovery and appear to be well informed as to the operative facts of this case, which is already almost two years old. Plaintiffs face considerable risks in establishing

liability, given that some of their claims have already been dismissed. Defendants are likely able to withstand a larger judgment; however, although plaintiffs' counsel maintain that they are ready, willing, and able to see this case through to trial, there may exist weaknesses in the merits of the case which would make it difficult for them to do so.

The relationship of the settlement fund to the best possible recovery or the potential recovery in light of all the risks of litigation also weighs in favor of approving the settlement. As stated above, defendants have agreed to furnish a cy pres payment of $15,000 as the portion of the settlement payable to the class. Were the case to proceed to trial, the distribution to the class could not exceed $10,000, or 1% of EEC's net worth of $1,000,000. With a class of over 45,000 persons, this recovery would be de minimus. Given the uncertainty of plaintiffs' recovery, I find the relief awarded to plaintiffs under the settlement to be within the range of possible approval.

<u>Notice and Hearing</u>

Under Rule 23(c)(2), this Court is to direct to the members of the class "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed R. Civ. P. 23(c)(2); *see also Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974). The form of notice must fairly apprise the

prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982). The proposed notice in this case contains all the necessary information, including a summary of settlement terms and procedures for objections and optouts.[4] However, the parties initially proposed only that they publish the notice for 2 consecutive weekdays in the New York Post. In a written opinion dated April 12, 2006, I held that individual notice to all putative class members is required under Rule 23. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 941765 (E.D.N.Y.2006). The parties have since informed the Court that they intend to mail the notice to each putative class member. Accordingly, the form and method of notice is hereby approved, and a hearing will be conducted pursuant to the terms set forth in the accompanying order.

## CONCLUSION

For the reasons set forth above, plaintiff's motions to certify the settlement class and for preliminary approval of the class settlement are granted. The parties are directed to mail

---

[4] Although the proposed form of notice contains all of the required elements, the notice is rife with typographical errors and omissions. A copy of the form of notice, with errors and omissions marked as such, is annexed.

notice of the settlement pursuant to the terms set forth in the accompanying order. Objections, requests for exclusion, an application for attorney fees, and a fairness hearing will also be conducted in accordance with the accompanying order.

The clerk is directed to transmit a copy of the within to all parties and to the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
          May 18, 2006

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge