UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

ANN READE-ALVAREZ and ANN R. STUDEN,
on behalf of themselves and all others
similarly situated,

             Plaintiffs,                CV-04-2195 (CPS)

                                     MEMORANDUM OPINION
   - against -                AND ORDER

ELTMAN, ELTMAN, & COOPER, P.C., ERIN
CAPITAL MANAGEMENT, LLC, JAMES BRIAN
BOYLE, WILLIAM NOLAN, ROBERT A. RUSSON,
PAUL RENAGHAN, CARL FON, MANUEL BRAD
MOSES, WILLIAM CORTELLESSA, PETER
COOPER and MILTON RAWLE,

             Defendants.

-----------------------------------------X

SIFTON, Senior Judge.


    This is a class action brought by Ann Reade-Alvarez
("Alvarez") and Ann R. Studen ("Studen") against defendants
Eltman, Eltman & Cooper, P.C. ("EEC"), Erin Capital Management,
LLC ("ECM") and several of their officers and directors
(collectively, "defendants"), for alleged violations of the Fair
Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"
or the "Act"). By memorandum opinion and order dated May 18,
2006, this Court granted the following motions: (1) to certify a
settlement class; (2) for preliminary approval of a proposed
settlement agreement; (3) for an order directing notice to the
class; and (4) for an order setting dates for optouts,

objections, and a hearing pursuant to Federal Rule of Civil Procedure 23(b)(3). Presently before the Court is plaintiffs' motion for final approval of the proposed class action settlement agreement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted, subject to the parties' modification of the Settlement Agreement in accordance with this opinion.

## BACKGROUND

The following facts are drawn from the parties' submissions in connection with this motion, as well as from prior opinions in connection with this case. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 369 F.Supp.2d 353 (E.D.N.Y. May 10, 2005); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, No. 04-2195, 2006 WL 1367414 (E.D.N.Y. May 18, 2006).

EEC is a law firm incorporated under the laws of the State of New York with its principal place of business in Manhattan. (Compl. ¶ 5).[1] ECM is a debt collection agency with its principal place of business in the same office as EEC. (*Id.* ¶ 6).

---

[1] Although plaintiffs filed a second amended complaint on January 3, 2005, Judge Glasser, in his May 10, 2005 Memorandum and Order granting in part and denying in part defendants' motion to dismiss, stated that plaintiffs never received permission from the Court to file the second amended complaint, and plaintiffs had not submitted evidence that defendants provided written consent to its filing. Accordingly, Judge Glasser declined to consider the second amended complaint, and considered only the first amended complaint, in deciding the motion to dismiss. As was the case in Judge Glasser's Memorandum and Order, references to the complaint in this Memorandum Opinion and Order are to the first amended complaint.

Plaintiffs allege that in correspondence they received from EEC, the telephone number and office address for EEC is the same as ECM. (*Id.* ¶¶ 47, 48). ECM is purportedly "sending letters and alleged legal pleadings under the name of the defendant EEC" and ECM's agents are, according to plaintiffs, engaged in the unauthorized practice of law. (*Id.* ¶ 49).

Facts Relating to Plaintiff Ann Reade-Alvarez

Reade-Alvarez allegedly incurred a debt to Providian, a company in the financial services industry, in the amount of $1,737.03. (Comp. ¶ 16). Providian assigned the debt to ECM. EEC, on behalf of its client, ECM, sent a letter dated November 26, 2003 to Reade-Alvarez. (Compl. ¶ 18). That letter, in addition to specifying the amount of the debt and the name of the creditor to whom the debt is alledly owed, states as follows:

> Please be advised that our firm has been retained by [ECM], purchaser of the above account, for the collection of this debt.

> Please call us to discuss this matter.

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

> This is an attempt to collect a debt by a debt collector
> and any information obtained will be used for that
> purpose.

Affidavit of Thomas A. Leghorn sworn to on January 20, 2005

("Leghorn Aff.").

EEC sent Reade-Alvarez a second letter dated December 31,

2003, more than thirty days after the first, stating in relevant

part, "[y]ou have ignored our previous correspondence, and

therefore, we assume that this is a valid debt and that you have

an obligation to pay." (Compl. ¶ 20; Leghorn Aff.). After

Reade-Alvarez failed to respond, EEC sent her a third letter

dated January 14, 2004, stating in relevant part, "[w]e have

attempted on numerous occasions to settle the above debt to no

avail. It is imperative that you contact this office as soon as

possible to discuss this matter. If we do not hear from you we

will have no alternative but to advise our client of your failure

to cooperate and request authority to commence legal action

against you for the full amount of the outstanding debt." (Compl.

¶ 22; Leghorn Aff.). Among other things, Reade-Alvarez asserts

that this letter is "deceptive and misleading in that" it

"falsely implies that...EEC would have no alternative but to

request authority from their client ECM to commence legal action

against" her, when "[i]n fact, the letter was sent by ECM [on]

EEC letterhead." (Compl. ¶ 24).

EEC sent Reade-Alvarez a fourth letter dated January 28,

2004, stating in relevant part:

> We want to help you clear your credit with our client. To help you do this we take a friendly approach to working out problems. We offer **AFFORDABLE PAYMENT PLANS** and courteous professional service. No matter your experience in the past we are here to resolve this debt now. <u>**THIS OFFER IS GOOD FOR 10 DAYS ONLY!**</u> TEN days after the date of this letter our client reserves the right to seek the full amount. **BY ACTING NOW YOU MAY SAVE HUNDREDS OF DOLLARS**.

(Compl. ¶ 25; Leghorn Aff.) (emphasis in original). Reade-Alvarez asserts that this letter is, among other things, "false, deceptive and misleading in that [EEC] claims to take a friendly approach to working out problems. In fact, this letter was sent fourteen (14) days after the letter defendant ECM had sent threatening to gain authority to commence legal action against the plaintiff...and 14 days before the letter defendant ECM sent notifying the plaintiff...that EEC had been authorized to commence legal action." (Compl. ¶ 27; Leghorn Aff.). Reade-Alvarez also asserts that this letter is misleading because it "falsely impl[ies] that [she] may not enter into a payment plan after the ten days have passed" and thus also "create[s] [a] false sense of urgency." (Compl. ¶¶ 28, 29).

EEC sent Reade-Alvarez a fifth letter, dated February 11, 2004, stating in relevant part, "[o]ur client has authorized us to commence legal action against you to recover the above balance. We would, of course, prefer to resolve the debt without recourse to litigation which is costly and a burden on all

concerned. Please contact our office as soon as possible so that we may discuss this matter. If we do not hear from you we can only assume that we have no choice but to bring suit against you for the full balance due." (Compl. ¶ 30; Leghorn Aff.). Reade-Alvarez contends that this letter is "false, deceptive and misleading" because, among other reasons, it "implies that...EEC has gained authority from ECM to commence legal action" against her when, in fact, "the letter has been sent from ECM and not EEC." (Compl. ¶ 32).

<u>Facts Relating to Plaintiff Ann R. Studen</u>

Studen allegedly incurred a debt to Discover, a credit card company, in the amount of $5,879.30. (Compl. ¶ 33). Thereafter, Discover assigned the debt to ECM. (*Id.* ¶ 34). In an effort to collect the debt, EEC forwarded a letter dated July 23, 2004 to Studen, which is substantially the same as the first letter sent to Reade-Alvarez. (*Id.* ¶ 35; Leghorn Aff.). More than 30 days later, by letter dated August 27, 2004, EEC forwarded a second letter to Studen, stating in relevant part as follows:

> We want to help you clear your credit with our client. To help you do this we take a friendly approach to work out problems. We offer **AFFORDABLE PAYMENT PLANS** and courteous professional service. No matter your experience in the past we are here to resolve this debt now. **<u>THIS OFFER IS GOOD FOR 10 DAYS ONLY!</u>** TEN days after the date of this letter our client reserves the right to seek the full amount. **BY ACTING NOW YOU MAY SAVE HUNDREDS OF DOLLARS.**

(Compl. ¶ 37; Leghorn Aff.) (emphasis in original). Studen claims this letter is "deceptive and misleading" because, among other

reasons, it "falsely implies that the plaintiff may not enter into a payment plan after the ten days have passed from" August 27, 2004 and therefore "create[s] [a] false sense of urgency." (Compl. ¶¶ 39, 40).

Plaintiffs allege that all of the above-referenced letters sent to them were "computer generated and w[ere] submitted... without any meaningful attorney review." (Compl. ¶¶ 19, 21, 23, 26, 31, 36, 38). They therefore assert that the letters are "false, deceptive and misleading because the least sophisticated consumer would believe the letter[s], and all documents concerning the alleged debt referenced therein, were reviewed by an attorney prior to" the time when they were mailed. (*Id.*).

ECM, by its attorneys EEC, filed a summons and verified complaint dated August 27, 2004 against Studen in the Civil Court of the City of New York, County of Queens, to recover the debt. (Leghorn Aff.). No attorney signed the complaint. (*Id.*). Studen alleges that no attorney from EEC, including the two individuals identified on the summons and complaint, "generated" these documents. (Compl. ¶ 42). The complaint was verified by Carl Fon, assistant secretary of ECM who signed under oath that he read the summons and complaint, knows "the contents thereof and the same are true to [his] knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true." (*Id.*). Mr. Fon's

personal knowledge is based on his review of records maintained by ECM. (*Id.*). Studen asserts, however, that a "false implication" exists that Mr. Fon executed the verification. (*Id.*).

Plaintiffs do not allege any actual damages; however, they seek statutory damages pursuant to 15 U.S.C. 1692k.[2]

<u>Defendant's Motion to Dismiss</u>

On December 17, 2004, defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). By written Memorandum and Order, dated May 10, 2005, Judge Glasser of this Court granted in part and denied in part the motion to dismiss. Judge Glasser denied defendants' motion to dismiss plaintiffs' claims that defendants violated the FDCPA when they sent plaintiffs computer generated letters which would cause the least sophisticated consumer to believe that the letters were reviewed by an attorney, when, in fact, they were not. Judge Glasser granted defendants' motion to dismiss plaintiffs' claims that the

---

[2] 15 U.S.C. 1692k(a) provides, in relevant part:
[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
    (1) any actual damage sustained by such person as a result of such failure;
    (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
    (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and
    (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

letters created a false sense of urgency and were therefore "false, misleading or deceptive" in violation of the FDCPA. Finally, Judge Glasser denied the individual defendants' motion to dismiss the FDCPA claims against them. Plaintiffs subsequently filed a notice of appeal of that decision with the Court of Appeals.[3]

<u>Motion for Preliminary Approval of Class Settlement</u>

After the parties moved for preliminary approval of the class settlement, I issued a memorandum opinion and order ("Preliminary Approval Order"): (1) certifying a settlement class;[4] (2) preliminarily approving the proposed settlement agreement; (3) directing notice to the class;[5] and (4) setting dates for optouts, objections, and a hearing pursuant to Federal Rule of Civil Procedure 23(b)(3). Fifteen requests for exclusion, two of which included objections, were received. The fairness hearing was held on July 20, 2006.

**DISCUSSION**

Plaintiffs move for final approval of the settlement

---

[3] The parties have since stipulated to withdraw the appeal without prejudice to its renewal.

[4] The settlement class is defined as follows: "All persons who were sent letters by the defendant Eltman, Eltman & Cooper, P.C. at addresses within the State of New York for the period May 27, 2003 (one year prior to the filing of the complaint) to the effective date of the order signed by the Court approving this class settlement through which said defendant attempted to collect from said persons personal debts alleged to be owed Erin Capital Management, LLC."

[5] The parties initially intended to provide notice to the class using solely newspaper publication; however, I concluded that individual notice to all putative class members was required and denied the motion for preliminary approval on that ground. The parties subsequently agreed to provide individual notice.

agreement under Rule 23(e) of the Federal Rules of Civil
Procedure, which states that class actions "shall not be
dismissed or compromised without the approval of the court, and
notice of the proposed dismissal or compromise shall be given to
all members of the class in such manner as the court directs."
Fed. R. Civ. P. 23(e).

The parties propose the following settlement:

[T]he Defendant Eltman, Eltman & Cooper, P.C. agrees that
attorneys must exercise supervision and control over non-
attorney staff in compliance with the FDCPA and state bar
ethics rules, and further agrees to adhere to the law of
this circuit as most recently set forth in *Greco v.
Trauner, Cohen & Thomas, LLP*, 412 F. 3d 360 (2d Cir.
2005).

[T]he Defendants will tender $15,000.00 as a Cy Pres
payment to the Queens County Legal Aid Society for use
defending consumers against lawsuits brought by debt
collectors. Statutory damages of $1,000.00 each will be
paid to Ann Reade-Alvarez and Ann R. Studen. An
additional payment of $1,000.00 each will be paid to Ann
Reade-Alvarez and Ann R. Studen for their services as
class representatives herein. $50,000.00 will be paid to
Plaintiffs' counsel, Robert L. Arleo, said amount
representing payment for attorney's fees and costs
advanced in conjunction with the herein action.

The parties further agree that if more than 10% of the
class members decide to opt out of the class, Defendants
may revoke the Settlement Agreement.

<u>Notice</u>

"[N]otices to class members can practicably contain only a
limited amount of information." *Weinberger v. Kendrick*, 698 F.2d
61, 70 (2d Cir. 1982). "Although no rigid standards govern the
contents of notice to class members, the notice must fairly

apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *Id*. (internal citations and quotation marks omitted).

In the Preliminary Approval Order, the Court directed the parties to make minor changes to the proposed form of notice, but concluded that the form notice was otherwise adequate. The parties were directed to complete mailing of the notices by June 2, 2006. In response, fifteen persons opted out, of which two individuals objected to the proposed settlement.

<u>Substantive and Procedural Fairness</u>

"The central question raised by [a] proposed settlement of a class action is whether the compromise is fair, reasonable, and adequate. *Weinberger,* 698 F.2d at 73. To determine whether this standard has been met, the court must "compare the terms of the compromise with the likely rewards of litigation." *In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985)(citations omitted). In evaluating the substantive fairness of a proposed settlement, the Court is guided by the nine factors initially enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action

through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)

(citations omitted); *see also In re Gulf Oil/Cities Service*

*Tender Offer Litigation*, 142 F.R.D. 588, 590 (S.D.N.Y.

1992)(applying *Grinnell* factors); *In re Warner Communications*,

618 F. Supp. at 740-741(same). The court must also examine the

negotiating process that gave rise to the settlement to determine

if it was achieved through arms-length negotiations by counsel

with the experience and ability to effectively represent the

class's interests. *See id.* at 741; *see also D'Amato*, 236 F.3d at

85 ("The District Court determines a settlement's fairness by

examining the negotiating process leading up to the settlement as

well as the settlement's substantive terms.").

## 1) The complexity, expense and likely duration of the litigation

As the Court noted in its preliminary approval of the

proposed settlement, the litigation poses a series of complex

logistical problems that will likely be expensive to manage

through trial, given that the class is so large and diffuse.

Defendants have already moved to dismiss the case; if the case

does not settle, protracted discovery and litigation will likely

ensue. Accordingly, this factor weighs in favor of approving the

settlement.

**2) The reaction of the class to the settlement**

Class action notices were mailed to more than 40,000 individuals. In response, fifteen individuals requested exclusion from the class,[6] and of those, only two stated objections to the settlement.  One member at the fairness hearing also objected on the grounds that the settlement notice was not clear.  This small number of objectors favors approval. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir.2001) (where 18 objections received out of 27,883 class notices weighed in favor of settlement); *see also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) ("the extremely small number of objectors . . . heavily favors approval"); *In re Mexico Money Transfer Litigation (Western Union and Valuta)* 164 F.Supp.2d 1002, 1021 (N.D.Ill.2000) (99.9% of class members having neither opted out nor filed objections indicated strong circumstantial evidence in favor of the similar settlement proposal.)

**3) The stage of the proceedings and the amount of discovery completed**

The stage of the proceedings and the amount of discovery the

---

[6] Written requests for exclusion were received from the following class members: Sola Iroko, Peter J. Zito, Robert S. Mendenhall, Gwen Irizarry, Vivian de los Santos, Susan Spinosa, Kevon L. Chisholm, Joyce McElwee, Keiko Arakawa, Eros A. Pheonix, Johnny Cummings, Louis Fuldman, Callista Bessellieu, John Guerriere, and Robert Forrest. In addition, at the fairness hearing, the following individuals indicated that they wished to be excluded: Mr. Zhoxha, Marilyn Pinckney, and Tusiant Venande.

parties have conducted is "relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re Painewebber Ltd. Pshps. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y., 1997). As the docket for this case reveals, since defendant's motion to dismiss was decided on May 10, 2005, the parties have engaged in extensive discovery and had several discovery disputes. Discovery was scheduled to be completed on January 30, 2006; however, counsel for plaintiffs informed the court on January 18, 2006 that the parties had reached a settlement. Because the parties engaged in extensive discovery and because discovery was near completion when the parties reached a settlement, this factor weighs in favor of approving the settlement.

**4) The risks of establishing liability and (5) The risks of establishing damages**

"In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate recovery against the inherent risks of litigation." *In re Medical X-Ray*, 1998 U.S. Dist. LEXIS 14888, at *11 (E.D.N.Y. 1998). Although risks associated with establishing damages in this case are low, since plaintiffs are only seeking statutory damages, the risks associated with establishing liability are real. In this case, defendant has already prevailed as to some of plaintiffs' claims, and it is possible that the remaining claims would also be

dismissed on motions for summary judgment or at trial. Moreover, as explained below, given the small amount of damages available in this type of case, the benefits of immediate recovery outweigh the risks associated with future litigation.

**6) *The risks of maintaining the class action through the trial***

The parties stipulated to class certification for settlement purposes only. If the class action were litigated, however, it is likely that defendants would oppose certification. *See In re Medical X-Ray*, 1998 U.S. Dist. LEXIS 14888, at *14 (possibility that defendants would challenge maintenance of class in absence of settlement was considered risk to the class and potential recovery). Furthermore, this Court has noted litigation will likely be expensive to manage, and is logistically complex. Accordingly, this factor weighs in favor of approving the settlement.

**7) *The ability of the defendants to withstand a greater judgment***

No argument is advanced that defendants cannot withstand greater judgment; however, as explained below, the amount of damages available under the present claim is relatively low. Accordingly, this factor neither supports nor weighs against the proposed settlement.

**8) *The range of reasonableness of the settlement fund in light of the best possible recovery and 9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation***

15 U.S.C. 1692k(a) provides, in relevant part:

> [A]ny debt collector who fails to comply with any provision
> of this subchapter with respect to any person is liable to
> such person in an amount equal to the sum of...(A) in the
> case of any action by an individual, such additional damages
> as the court may allow, but not exceeding $1,000; or (B) in
> the case of a class action, (i) such amount for each named
> plaintiff as could be recovered under subparagraph (A), and
> (ii) such amount as the court may allow for all other class
> members, without regard to a minimum individual recovery,
> not to exceed the lesser of $500,000 or 1 per centum of the
> net worth of the debt collector . . . .

As I noted at the preliminary approval stage, defendants have agreed to furnish a cy pres payment of $15,000 as the portion of the settlement payable to the class. Were the case to proceed to trial, the distribution to the class could not exceed $10,000, representing 1% of EEC's net worth of $1,000,000. With a class of over 45,000 persons, this recovery would be de minimus.[7]

In light of the risks of litigation and the best possible recovery in this case, I find the settlement to be reasonable.[8]

---

[7] Cy pres remedies are typically sought in the trust context. Specifically, "where the funds in a charitable trust can no longer be devoted to the purpose for which the trust was created, they may be diverted to a related purpose." *Mirsafihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 784 (7th Cir. 2004). However, in class actions, cy pres payments may be made "to prevent the defendant from walking away from the litigation scot-free because of the infeasibility of distributing the proceeds of the settlement . . . to the class members." *Id.* *See also Six (6) Mexican Mine Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) (noting that "[f]ederal courts have frequently approved [the cy pres] remedy in the settlement of class actions where the proof of individual claims would be burdensome or the distribution of damages costly"); *In Re Agent Orange Product Liability Litigation*, 818 F.2d 179, 185 (2d Cir. 1987) (noting the availability of cy pres remedies or "fluid class recovery" where individual payment to class members would otherwise be unmanageable).

[8] Many courts have concluded that injunctive relief is not available to private litigants under the FDCPA. *See, e.g., Petrolito v. Arrow Financial Services, LLC*, 221 F.R.D. 303, 312 (D.Conn. Apr. 8, 2004); *In re Risk Management Alternatives, Inc.*, 208 F.R.D. 493, 503 (S.D.N.Y. Jun. 14, 2002); *Sokolski v. Trans Union Corp.*, 178 F.R.D. 292, 299 (E.D.N.Y. Mar. 24, 1998); *see also Weiss v.*

**10) *Arms-Length Negotiations***

In the Preliminary Approval Order, the Court concluded that the Settlement Agreement was both substantively and procedurally fair. "It is not for this Court to substitute its judgment as to a proper settlement for that of such competent counsel in view of the fairness of the settlement to the class members." *In re Warner Communications Sec. Litig.*, 618 F. Supp. at 746. The proposed settlement does not appear to be collusive, taking into account the lengthy and detailed negotiations that the parties have undertaken. The parties have not only litigated a motion to dismiss and engaged in discovery disputes, but as explained below, the parties have also disagreed over the terms of the settlement agreement. Accordingly, I find that the parties have engaged in "arms-length negotiations."

Objections to the Proposed Settlement

As stated above, of the over 40,000 class members that were sent settlement notices, only two, John Guerriere and Robert Forrest, submitted objections in writing. Both also chose to exclude themselves from the class. Their objections are addressed below.

---

*Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004); *Sibley v. Fulton DeKalb Collection Service*, 677 F.2d 830, 834 (11th Cir. 1982) ("Indeed, equitable relief is not available to an individual under the civil liability section of the Act."). Thus, the proposed settlement provision that EEC attorneys exercise supervision over non-attorney staff in compliance with the FDCPA and state bar ethics rules affords the class members more than they could have obtained under the FDCPA. Such an outcome supports the reasonableness of the proposed settlement.

*Objections Regarding Attorney's Fees*

Both Guerriere and Forrest object to the settlement on the grounds that it unfairly compensates plaintiffs' attorney and the class representatives to the detriment of the class. The attorney's fee proposed in the settlement agreement is $50,000. "Attorney's fees included in a class action settlement are, like every other aspect of such agreements, subject to the determination whether the settlement is fundamentally 'fair, adequate, and reasonable'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2002) (quoting Fed. R. Civ. Proc. 23(e)); *see also U.S. Trust Co. of New York v. Shapiro*, 835 F.2d 1007, 1009 (2d Cir. 1987); *In re Johns-Manville Corp.*, 2004 WL 1876046, at *37 (S.D.N.Y. Aug. 17, 2004).[9] "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award." *Id. See also Prandini v. National Tea Co.*, 557 F.2d 1015, 1020 (3d Cir. 1977) (noting that "a defendant is interested only in disposing

---

[9] Class counsel must apply to the court for an award of attorney's fees after approval of the settlement. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1046 (9th Cir. 2002). In this case, however, because attorney's fees form part of the settlement agreement itself, I consider the proposed attorney's fee along with the rest of the agreement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9 Cir. 1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . . The settlement must stand or fall in its entirety."); *see also see also U.S. Trust Co. of New York*, 835 F.2d at 1009 (remanding to district court to determine whether attorney fee in settlement was fair and reasonable under Rule 23(e)); *In re Johns-Manville Corp.*, 2004 WL 1876046, at *37 (reviewing fairness and reasonableness of attorney's fees as part of settlement agreement).

of the total claim asserted against it . . . the allocation
between the class payment and the attorney's fees is of little or
no interest to the defense . . . ."); *Charles v. Goodyear Tire &
Rubber* Co., 976 F.Supp. 321, 323 (D.N.J. Sept. 5, 1997) (stating
that "even when the parties have agreed on an attorneys' fee
award, the danger exists that the lawyers might urge a class
settlement at a low figure or on a less-than-optimal basis in
exchange for red-carpet treatment for fees."). Scrutiny is
particularly important where the proposed attorney's fee is
substantially greater than the proposed class settlement or where
the class settlement is non-pecuniary. *See Polar International
Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 119 (S.D.N.Y. May 17,
1999).[10]

    In this case, while the attorney's fee substantially exceeds
the cy pres payment award to the class, the class members have
not been disadvantaged by the attorney or representatives
receiving compensation, because, as stated above, the class as a
whole in any event could only receive $10,000 under the statute.
Courts have consistently upheld class action settlements

---

[10] In that case, the district court observed that

    [t]hrough the use of a non-pecuniary settlement coupled with an application
    for attorney's fees, defendants benefit by receiving release from suit,
    plaintiff's counsel benefits in the most tangible form – cash – and unless
    the non-monetary settlement offers something of real value to class
    members, they have relinquished their legal rights to maintain a suit in
    exchange for very little.

*Polar,* 187 F.R.D. at 119.

notwithstanding differences in the economic interests of class counsel and class members. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078-79 (2d Cir. 1995) (disparity in compensation between class counsel and class members exists "without any conflict of interest in many class actions"); *In re Mexico Money Transfer*, 164 F.Supp.2d at 1033 (no conflict where attorney fees negotiated separately and compensation to class members is significant).

In determining a reasonable fee, the Supreme Court has held that the "most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blum v. Stenson*, 465 U.S. 886, 888 (1984). This approach is known as the lodestar method. *In re Sterling Foster & Co., Inc.*, 2006 WL 3193744, at *7 (E.D.N.Y. Oct. 31, 2006); *see also Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999). If the attorney's proposed fee is greater than the lodestar, he has "the burden of showing that 'such an adjustment is *necessary* to the determination of a reasonable fee.'" *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (citing *Blum v. Stenson*, 468 U.S. 886, 898 (1984)) (emphasis in original). In its discretion, the court may then apply a multiplier based on other factors such as "(1) the time expended and expertise of counsel,

(2) the magnitude and complexities of the litigation, (3) the

risks involved in the litigation, (4) the quality of the

representation, (5) the requested fee in relation to the

settlement, (6) and public policy considerations." *In re Sterling*

*Foster* at *7; *see also Savoie,* 166 F.3d at 460 (identifying

multiplier factors such as risk of litigation, complexity of the

issues, and skill of attorneys); *City of Detroit v. Grinnell*

*Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (identifying similar

factors).[11] "What constitutes a reasonable fee is properly

committed to the sound discretion of the district court."

*Goldberger*, 209 F.3d at 47.

　　The first consideration is whether the time spent on the

litigation and the proposed hourly rates are reasonable. Counsel

has submitted detailed time records showing that he expended

approximately 132 hours on this litigation. These records

establish that much of his time was spent preparing and filing

motion papers, communicating with other counsel about settlement,

---

[11] Courts may also employ a "percentage of the fund" approach, in which "the courts sets some percentage of the recovery as the fee." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (holding that "both the lodestar and the percentage of the fund are available to district courts in calculating attorneys' fees in common fund cases"). In this approach, courts consider the same additional multiplier factors as they do under the lodestar approach. *Id.* I adopt the lodestar approach in this case because, after cross-checking all possible percentages of the fund with the amount the attorney would receive under a reasonable hourly rate (as he would receive under the lodestar method), I find that the disparity would be unreasonably large. *See Goldberger*, 209 F.3d at 50 (when considering percentage approach, recommending cross-checking reasonableness of requested percentage with documentation of hours worked), *cited in In Re Sterling Foster & Co., Inc.*, 2006 WL 3193744, at *7; *see also Savoie*, 166 F.3d at 461 (affirming use of lodestar approach because "percentage-of-the-fund method would have accomplished none of its anticipated benefits").

and participating in hearings in the Eastern District of New York. Counsel also personally communicated with more than 100 class members, many of whom are not fluent in English, explaining the litigation and settlement of this case and addressing members' questions regarding their underlying debts that had been purchased by defendant Erin Capital Management. Given the range of activity required by this case, I conclude that counsel expended a reasonable number of hours on the litigation.

In determining a reasonable hourly rate, the court considers the attorney's "normal billing rate," *Lindy Brothers Builders, Inc.*, 487 F.2d at 167, as well as his "legal representation and status (partner, associate)." *Id.* Counsel billed his hours at a rate of $420 per hour, amounting to a total bill of $55,398 for time worked. In addition, he has advanced $725.49 in costs. Counsel states in his Affirmation that he has previously billed $420 per hour for his legal services. He has over 15 years experience litigating FDCPA matters and teaches the FDCPA as an Adjunct Professor of Law at Thomas Jefferson Law School, an A.B.A. approved law school in San Diego, California. Given these circumstances, an hourly rate of $420 is reasonable. The lodestar would thus equate to counsel's total bill of $55,398. Because the proposed fee of $50,000 is actually lower than the lodestar, that proposed amount is justifiable. Since the proposed fee does not exceed the lodestar, I need not address the additional multiplier

factors that might justify an upward adjustment.

*Objections Regarding Class Representatives*

With respect to the objection that the class representatives are receiving an award to the detriment of other class members, I note that courts have approved such awards "to compensate named plaintiffs for the risk they have incurred by pursuing the class action and the extra effort they have expended." *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 94-CV-5587, 2003 U.S. Dist. LEXIS 8239, at *7, (S.D.N.Y. May 15, 2003). In another case, plaintiffs cited a study that found the average payment between $1,000 and $5,000. *Shepard et al. v. Consolidated Edison Co. of New* York, 94-CV-0403, 2002 U.S. Dist. LEXIS 16314, at *22, n.10 (E.D.N.Y. August 1, 2002). The Court noted that:

> Courts in this circuit generally make these awards based upon 'the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by the plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.'

*Id*. at *16-17 (citing *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)). Here, the class representatives are to receive $1000 each for their services. Considering this case is over two years old, I find that this compensation is not excessive.

Robert Forrest also objects to the settlement because the

class representatives do not adequately represent his interests.

He states that defendant Erin Capital Management has instituted

legal proceedings against him, whereas there is no indication

that the class representatives have experienced the same. I note

that Forrest's objection can be cured by opting out of the

settlement, which Forrest has done. Accordingly, this objection

does not weigh against approval.

Finally, and most importantly, Forrest objects to the

release contained in the settlement agreement as being overbroad.

The release states:

> The named Plaintiffs and each of the class members not
> opting out shall, as of the Effective Date, be deemed to
> release and discharge forever Defendants and its [sic]
> heirs, the current and former officers, directors,
> successors, predecessors, executors, administrators,
> assigns, shareholders, affiliated companies, and
> employees ("Released Parties"), from all claims,
> controversies, actions, causes of actions, demands,
> torts, damages, costs, attorneys' fees, moneys due on
> account, obligations, judgements, alleged violations of
> the Fair Debt Collection Practices Act, 15 U.S.C. section
> 1692 et. seq. or liabilities of any kind whatsoever in
> law or equity, arising out of agreement or imposed by
> federal or state statute, common law or otherwise, from
> the beginning of time to the date this Agreement is
> signed, whether or not known now, anticipated, suspected
> or claimed, fixed or contingent, whether yet accrued or
> not and whether damage has resulted from such or not.
> This release is conditioned upon the performance by
> Defendants of their obligations towards the class members
> set forth in this settlement agreement.

Plaintiff responds that the release "should be modified to

indicate that the settlement agreement is limited only to claims

and defenses related to allegations of violation of the Fair Debt

Collection Practices Act (FDCPA) as set forth in the amended complaint herein." Defendants object to plaintiff's proposed modification, stating, "if the release is modified such that the release pertains only to claims brought pursuant to FDCPA, the defendants face the possibility of exposing themselves to a myriad of different state law claims."

I conclude that modification of the release is warranted; however, the modification warranted is not that which plaintiff proposes. Courts have routinely held that releases in class action lawsuits can be worded so that class members are prevented from bringing subsequent suits based on legal theories different from those in the class action complaint; however, only claims based on "identical factual predicate" may be released. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir.2005) ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct"); *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 18 n.7 (2d Cir. 1981) ("settlement could properly be framed so as to prevent class members from subsequently asserting claims relying on a legal theory different from that relied upon in the class action complaint but depending upon the very same set of facts"); *TBK*

*Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir.1982) ("We therefore conclude that in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action").

Defendant is therefore correct that the release need not be modified to be limited to FDCPA claims; however, the release must be modified to be limited to claims involving "identical factual predicate." The release as it is currently worded does not contain this necessary limit. Accordingly, the settlement can only be approved subject to the parties' modification of the release.

CONCLUSION

The settlement is approved provided the parties consent in writing to the modification of the settlement on or before January 5, 2007. Following the submission of such consent, the

parties shall settle a final order on five (5) days notice.

The Clerk is directed to transmit a copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated : Brooklyn, New York
December 11, 2006

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge